## CHARLES M. DU PUY

*vs.*

## THE STANDARD MINERAL COMPANY, and others.

### Sagadahoc.    Opinion June 25, 1895.

*Trust.    Jurisdiction in rem. ,  Non-resident Parties.*

Where real estate situated in this State has been conveyed by deed in trust, *held*, that the trust is within the equity jurisdiction of this court and may be dealt with regardless of the residence of the parties in interest. When the trustee under the conveyance voluntarily submits himself to the jurisdiction of the court, both the res and the title to it are in court.

Whether a bill in such case will be sustained and relief given is a matter of discretion to be considered at the hearing of the parties in the court below; but the jurisdiction of the court is well settled, and its jurisdiction of the res enables the court to execute its own decrees by sale or other apt methods.

ON EXCEPTIONS.

Bill in equity, praying that the plaintiff might be discharged as trustee in a certain trust deed and for the appointment of a new trustee.

The bill having been dismissed in the court below, for want of jurisdiction on the ground that the trust was created outside the State, and none of the parties interested being citizens or inhabitants of the State, the plaintiff took exceptions to the decree dismissing the bill.

The plaintiff filed his bill of complaint on September 24, 1894, and having proved to the satisfaction of the court that all of the defendants reside out of the State of Maine, but within the United States and east of the Mississippi river, the court made an order on the 12th day of October, 1894, requiring the defendants to appear and answer the bill within one month

from the rule day next succeeding the date of said order, to wit, within one month from the 6th day of November next succeeding the date of said order, and directing that service of said order be made upon the defendants by publication three times in different weeks within thirty days in the Bath Enterprise, a newspaper published within the county of Sagadahoc.

The plaintiff on the 8th day of December, 1894, filed a motion in writing that the bill be taken pro confesso. On the 5th day of January, 1895, this cause duly came on to be heard and was argued by counsel, and it was proven to the satisfaction of the court that the plaintiff was a citizen of the State of New York, and that service of said order had been made by publication as therein directed and that none of the defendants had appeared or had interposed any answer, plea or demurrer to the bill, but that the defendants, Daniel H. Bacon and Frank E. Thompson, had by their petition duly acknowledged and presented to the court, joined in the prayer of the bill of complaint, and requested the court to appoint Edward Sturges Hosmer, Esquire, of the city of New York, in the place of the plaintiff, as trustee of the trust set forth in the bill of complaint, and that the plaintiff and the said Daniel H. Bacon and the said Frank E. Thompson had by an instrument in writing, duly acknowledged, waived their right to security for the due execution of the said trust, as to their respective interests, aggregating seven hundred and ninety-two one-thousandths, in case the said Edward Sturges Hosmer were appointed as such trustee, and that a bond in the sum of three thousand one hundred and twenty dollars will be adequate protection to the other beneficiaries for the due execution of the trust as to their remaining interest of two hundred and eight one-thousandths; thereupon, after due consideration, and after reading the said bill and the order of publication and proof of compliance therewith, and the petition of Daniel H. Bacon and Frank E. Thompson, and the affidavits of Brainard Tolles and Charles M. Du Puy, and the waiver of security above recited, it was —

Ordered, adjudged and decreed : That the bill be dismissed for lack of jurisdiction, on the ground that the trust was created

outside of the State of Maine, and none of the parties interested therein, or in this suit, are citizens or inhabitants of the State of Maine.

Some of the principal portions of the plaintiff's bill are as follows :

"First. On or about the eighth day of August, 1889, the defendant, the Standard Mineral Company, being then seized in fee simple absolute of two certain lots, pieces or parcels of land situate in the town of Georgetown, county of Sagadahoc and State of Maine, . . . did convey the said two lots, pieces and parcels of land to your orator, by the execution and delivery of the deed aforesaid, in trust nevertheless : (1) To hold and keep the same until such time as your orator should sell the same, as in said deed provided ; (2) to sell the same at such time and place and in such manner as to your orator might seem best, either at public or private sale, for such sum of money as to your orator might seem best, and (3) to apply the proceeds over and above all lawful costs and expenses incurred in the administration of the trust, as follows : To keep and apply to the individual use of your orator five hundred and three one-thousandths of the net proceeds of said sale ; to pay to Daniel H. Bacon, one hundred and sixty one-thousandths of said proceeds ; to pay to Frank E. Thompson one hundred and twenty-nine one-thousandths of said proceeds ; to pay to I. W. Shuttuck eleven one-thousandths of said proceeds ; to pay to A. E. Sumner one hundred and ten one-thousandths of said proceeds ; to pay to Elizabeth Little thirty-two one thousandths of said proceeds, and to pay to Orvillus H. Gilbert fifty-five one-thousandths of said proceeds, the terms and conditions of which trust being more fully set forth in the aforesaid deed. . . .

"Second. Since the delivery of said deed your orator has acquired a lien by way of mortgage upon the share or interest in said proceeds set apart to Daniel H. Bacon and to Frank E. Thompson, to secure payment of two several promissory notes in the aggregate sum of seven thousand five hundred dollars, which are both due and unpaid. Since the delivery of

said deed the aforesaid Elizabeth A. Little has intermarried with the aforesaid I. W. Shuttuck and is now the defendant Elizabeth A. Shuttuck. Since the delivery of said deed the said I. W. Shuttuck has died and letters of administration of all the goods, chattels and credits which were of his estate have been duly granted by the Surrogate of the County of New York, in the State of New York, where the said I. W. Shuttuck was residing at the time of his death, to the defendant Elizabeth A. Shuttuck. The defendant Anna M. Clayton claims to have derived some right or title to the share or interest in said proceeds set apart to A. E. Sumner, since the delivery of said deed, but as to the nature of the right or title, if any, of said defendant to the said part or share, your orator is not informed and makes no allegation.

"Third. Notwithstanding diligent effort to sell the said lands, your orator has not been able to find a purchaser therefor at private sale, at a fair and reasonable price, or at any price. The said lands are now subject to liens for unpaid taxes for the years 1891, 1892 and 1893. In order to avoid a total loss of the lands, the best interest of all the beneficiaries of the said trust requires that the said lands be sold at public sale as soon as possible. Such sale cannot be made by your orator without danger of sacrificing both his own interest and that of the other beneficiaries, for the reason that none of the other beneficiaries are willing to purchase the said lands at a fair and reasonable price or at any price, and your orator upon such public sale would be incompetent, as trustee, to bid for or to purchase the said lands even though such course should be necessary to protect his beneficial interest in the trust estate, and his lien upon the interests of the defendants Daniel H. Bacon and Frank E. Thompson.

"Fourth. The said lands are vacant and uncultivated and valuable only for quarry purposes, and your orator has derived no profit or income therefrom, and has permitted no waste to be committed in respect thereto, and has not conveyed or encumbered the same, or any part thereof.

"Wherefore, your orator prays to be discharged from his

office of trustee, and that a new trustee be appointed by this court, and that the aid and direction of the court be given to such new trustee in the execution of the trust set forth in the aforesaid deed of conveyance, and that such new trustee be instructed to sell the lands aforesaid with all convenient speed and to distribute the proceeds thereof to the persons respectively entitled thereto, and that your orator may have, generally, such other and further relief as the circumstances and nature of the case may require," etc.

*Francis Adams and Nathan Coombs*, for plaintiff.

*Brainard Tolles*, of the New York bar, filed a brief and argued :

(1) That the judgment denying relief to the plaintiff because he is a citizen of New York and not of Maine is contrary to the second section of Article Fourth of the Constitution of the United States which provides, "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several states."

(2) That the judgment is contrary to the law of the State of Maine because,

(*a*) The controversy is one which the judicial power of the State of Maine is competent to determine, inasmuch as it relates to the title to lands within the State.

(*b*) All the judicial power which the State of Maine has over such controversies has been conferred on this court by R. S., chap. 68, § 5.

All essential elements of jurisdiction are present, and an effectual decree can be made and enforced so as to do justice between the parties. *Castrique* v. *Imrie*, L. R. 4 H. L. 414, 429 ; *Merrill* v. *Curtis*, 57 Maine, 154 ; *Ward* v. *Arredondo*, Hop. Ch. 213.

(3) Proceeding in rem : *Pennoyer* v. *Neff*, 95 U. S. 714 ; *Arndt* v. *Griggs*, 134 U. S. 329 ; *Single* v. *Scott Paper Co.* 134 U. S. 117.

The judgment now sought is in rem and not one in personam against any of the defendants.

(*a*) It is not sought to require the defendants to do or to

refrain from doing any act. It is not sought to impose any personal liability or obligation upon them.

(*b*) It is not a judgment capable of enforcement outside the limits of the State. Affecting as it does the title to real estate here situated, the only way in which it can ever be directly enforced will be when some controversy arises over the possession of the land. Then the right to possession will be enforced according to the title created by the decree. Manifestly this is a matter exclusively for the local executive power. No other State could reach within the borders of Maine and enforce a judgment affecting the title or possession of land within this State.

(*c*) The court has power to make a decree operating directly upon the title to the land, and not needing the execution of a conveyance to make it effectual. Of course, as a matter of practice, in all ordinary cases, a conveyance would be made. But the title would pass, not by force of the conveyance, but by force of the decree. See *Kenady* v. *Edwards*, 134 U. S. 117, overruling in part *Greenleaf* v. *Queen*, 1 Pet. 139, upon which a dictum, contrary to the case cited, was based in *Matter of Abbott*, 55 Maine, 580; *Bradstreet* v. *Butterfield*, 129 Mass. 339; *Attorney General* v. *Barbour*, 121 Mass. 568; *Bliss* v. *Bradford*, 1 Gray, 407; *Pillsbury* v. *E. & N. A. R. Co.* 69 Maine, 394.

(4) Jurisdiction over actions in rem, respecting Maine real estate is perfect and exclusive :

(*a*) The regulation of titles to Maine real estate is governed by the laws of this State, and upon the courts of this State ought to fall, in the first instance, the duty of declaring and applying those laws.

(*b*) This State has a primary interest in the possession, development and use of lands situated within its borders, and ought not to permit the same to be tied up and rendered unproductive through the lack of legal remedies for complications of the title.

(*c*) The executive power of this State is alone able to enforce decrees affecting the title to lands within the State.

(*d*) This State is the only one to which non-resident beneficiaries would naturally look to receive notice of proceedings affecting the title to lands here situated. Too heavy a burden would be laid upon them if they were required to read all the newspapers published in all the states of the Union, at the peril of being held bound by a publication made in Florida or Montana. *Arndt* v. *Griggs*, supra; *Williams* v. *Maus*, 6 Watts, 278; *Bowditch* v. *Banuelos*, 1 Gray, 220; *Eaton* v. *McCall*, 86 Maine, 348; *Lynde* v. *C. C. & I. C. R. Co.* 57 Fed. Rep. 993; *Farmers L. & T. Co.* v. *Postal Tel. Co.* 55 Conn. 334; *Pitts, &c. R. Co.'s Appeal*, 4 Cent. Rep. 110; *Knox* v. *Jones*, 47 N. Y. 395; *Butler* v. *Green*, 19 N. Y. (Super.) 890; 1 Pom. Eq. § 298; *People* v. *Am. L. & T. Co.* 43 N. Y. St. Rep. 332.

In considering the assertion that the jurisdiction of the courts of this State to remove and discharge trustees of lands in this State, and to appoint their successors, is exclusive as well as complete, regard should be had to the distinction between the relief granted in such cases and that which consists merely in an enforcement of the provisions of the contract out of which the trust arose, as, for example, in actions to compel the performance of duties appertaining to the trust, or actions for an accounting. In the latter class of cases the court has to do merely with personal duties and obligations. The title to the trust estate is not affected, and all the terms and conditions of the trust remain unaltered.

Non-residence of defendants no obstacle to jurisdiction. *Inhabitants of Anson*, &c., 85 Maine, 79.

The authorities sustain the proposition that the notification of beneficiaries, in proceedings to remove or discharge trustees, is a matter of local law and is not a condition precedent to the exercise of jurisdiction. Any State, if it sees fit, may dispense with it altogether, and decrees rendered without notice to the beneficiaries will be valid, where the court has jurisdiction over the trustee and over the corpus of the trust estate.

This was expressly determined by the Supreme Court of the United States in the long contested litigation which successive-

ly appeared before that tribunal under the titles:  *Williamson* v. *Berry*, 8 How. 495 ; *Suydam* v. *Williamson*, 24 How. 433 ; *Williamson* v. *Suydam*, 6 Wall. 738.  This is a cause celebre in respect to the power of a state over real property within its borders.  It was finally determined in favor of the claim of authority on the part of the State, the Supreme Court reversing itself in order to follow the decision of the local tribunal. *Matter of Robinson*, 37 N. Y. 261 ; *Nicoll* v. *Boyd*, 90 N. Y. 516 ; *De Peyster* v. *Beekman*, 55 How. Prac. 92 ; *Estate of Brick*, 9 Civ. Prac. 400 ; *Tompkins* v. *Moseman*, 5 Redf. 402 ; *Chase* v. *Chase*, 2 Allen, 101 ; *Short* v. *Caldwell*, 155 Mass. 57 ; *Felch* v. *Hooper*, 119 Mass. 52.

Even conceding that some notice to beneficiaries is necessary, it is evident that this power of giving notice by publication to non-residents is one which it is absolutely necessary for the courts of this State to possess.  Without it, titles might be tied up by interminable complications, for which the courts would have no power to give relief.  The unexpected inability of a trustee to act might result in valuable lands lying idle, employing none of the industry of the State and contributing nothing to its wealth and prosperity.

Non-residence of plaintiff no obstacle to jurisdiction.  *Loaiza* v. *Superior Court*, 85 Cal. 11 ; *Sentenis* v. *Ladew*, 140 N. Y. 463 ;  *Cole* v. *Cunningham*, 133 U. S. 107 ;  *Corfield* v. *Coryell*, 4 Wash. C. C. 380 ; *Barrell* v. *Benjamin*, 15 Mass. 354 ; *Cofrode* v. *Gartner*, 79 Mich. 332.

The situation actually existing is this : The court has jurisdiction of the land ; it has also personal jurisdiction of the trustee and of the holders of seven hundred and ninety-two one-thousandths of the beneficial interest.  The holders of two hundred and eight one-thousandths of the beneficial interest have been served by publication and have not appeared.  The court has power to appoint a new trustee and to confer upon him a good title to the trust estate.  It is for the interest of the State and in accord with public policy that this power should be

exercised. If this court does not intervene the parties are remediless and both plaintiff and defendants must suffer loss. The relief demanded is one which would be instantly accorded to a citizen of Maine, and Maine is bound by solemn compact with her sister State, New York, to accord to the citizens of the latter all the privileges and immunities which she grants to her own citizens.

SITTING: PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, WISWELL, JJ.

HASKELL, J. The real estate mentioned in the bill is situated in the county of Sagadahoc, and was conveyed to the plaintiff, by deed, in trust for specific purposes therein named. This trust is within our jurisdiction, and may be dealt with regardless of the residence of the parties in interest. The plaintiff is the trustee and voluntarily submits himself to the jurisdiction of the court, so that both the res and the title to it are in court. Whether the bill shall be sustained and relief given is a matter of discretion to be considered below; but the power is settled beyond question, as the authorities cited at the bar clearly signify.

The early doctrine laid down by some writers that the remedy in equity is purely personal, and that, as decrees in equity never execute themselves, it is necessary to have jurisdiction of the person in order to make decrees effectual, does not hold true in all cases and has been very generally discarded, inasmuch as jurisdiction of the res enables the court to execute its own decrees touching it by empowering an officer of the court to transfer titles, even to real estate, by sale or other apt methods, so that the equitable interests of all concerned may be preserved and the property applied, or distribution of the assets made, as the respective interests therein may require.

Since the doctrine alluded to obtained, equitable interests have multiplied in the shape of liens, created by law, and of resulting trusts, and from many other methods of business that the commercial world has adopted and engrafted upon the strict

rules of the common law ; so that it has become imperative that jurisdiction of the res should be sufficient to give adequate relief in all matters where equitable interests have attached. Of course, this jurisdiction must be exercised with great prudence, and only where the court is satisfied that absent parties have knowledge of the proceeding and have had ample opportunity to intervene and protect their. rights.

In this cause, the res is within the jurisdiction of the court, and whether the relief sought should be given is a consideration to be determined below after a careful review of all the rights and interests involved, so that sound equity may be done.

*Exceptions sustained. Bill retained*
*for hearing.*